JOHN V. HOLLEY and MARY B. HOLLEY, his wife,
Plaintiffs,

*vs.*

JAMES E. JACKSON, JR. and IMELDA M. JACKSON, his wife,
Defendants.

*Kent, December 28, 1959.*

*Harold Schmittinger,* Dover, for plaintiffs.

*Henry Ridgely,* Dover, for defendants.

SEITZ, Chancellor: John V. and Mary B. Holley, husband and wife ("plaintiffs"), brought this action to rescind a contract for the sale of certain real estate (and personal property used therein) which was made with the defendants. This is the decision after final hearing.

The agreement of sale, dated March 20, 1959, involved then un-occupied real estate in Kent County which was useable for a restaurant. Some of the events leading up to the execution of the contract of sale are pertinent. Plaintiffs decided to purchase a property suitable to operate a restaurant. They had no experience in real estate matters and lacked any real business sophistication. Plaintiff, John Holley, and his mother, contacted the Service Realty Company in Dover. Although they were interested in another property, they were also shown the property ultimately purchased, which was owned by defendants, and for which Service Realty was agent.

Overnight, after seeing the property, the plaintiffs, through the husband, agreed to buy it at the offered price. When they came the next day to sign a contract they did not have a lawyer and the agent for Service Realty Company suggested the name of Ernest V. Keith in Dover. Both plaintiffs and defendants in effect agreed that Mr. Keith should be their attorney in connection with the handling of the transaction. I am satisfied that Mr. Keith, who received fees for different services from plaintiffs and defendants, was acting as attorney for both sides with their consent. Mr. Keith was to search the title for plaintiffs and obtain title insurance. I am satisfied that plaintiffs were unaware at the date of settlement that Mr. Keith was the owner of Service Realty Co., which was to receive the real estate commission upon the making of the sale.

At the time they viewed the property the plaintiffs paid a $100 "retainer." On the following day, with Mr. Keith present, they paid $2,900. They also agreed to have Mr. Keith write the insurance, which was cancelled later. Under the terms of the agreement plaintiffs' were to pay an additional $2,000 within a certain time thereafter. The balance of $10,000 was to be taken care of by a purchase money mortgage, "the interest and payment of which is being worked out in keeping with the banks' requirements, and satisfactory to both parties." The contract provided that the "Vendors agree to deliver unto Vendee a good, marketable deed conveying unto Vendor a fee simple title free and clear of all liens and encumbrances * * *." The settlement was to be three months thereafter. However, plaintiffs went into immediate possession and after spending money to repair the place they commenced the operation of a restaurant.

At the settlement on June 12, 1959, plaintiffs paid the aforementioned additional $2,000 to defendants. Plaintiffs also executed a purchase money mortgage in the sum of $10,000. At the same time defendants tendered to plaintiffs a deed to the premises which had been prepared by Mr. Keith, who was present.

It was agreed at the trial that the deed was not for the full amount of land which was to be conveyed under the terms of the contract but I am satisfied that this matter was brought to plaintiffs' attention and that they agreed that the additional land could be conveyed later. Defendants did acquire such land later and were willing to convey it. I do not consider this aspect of the matter any independent ground for granting relief to plaintiffs. However, as later discussed, I think it is a factor adverse to defendants' position.

At the time of the sale and at the time of the settlement the real estate actually conveyed was subject to two liens of record; one being a mortgage of the defendants to the Bank of Delaware and the other being a judgment of the Bank of Delaware against defendants. The liens amounted to more than $12,000.

Plaintiffs conducted a restaurant business on the premises and they paid defendants a $100 payment on the bond and purchase money mortgage in July and a similar payment in August.

Although the matter is in dispute, plaintiffs claim and I find that they did not discover that there were liens on the purchased property until August 1959. The matter then became the subject of a heated controversy and ultimately the plaintiffs, at the instructions of their attorney, gave up possession of the premises and brought this action to rescind. The liens are still extant although defendants say they are willing to extinguish them on short notice.

Preliminarily, it should be noted that defendants do not deny that the liens had not been "cleared" at the time of the conveyance. It is defendants' position that it was contemplated, and plaintiffs were aware and agreed, that defendants would work out a deal with the Bank of Delaware whereby the Bank would take over plaintiffs' purchase money mortgage and would remove its liens against the purchased property. A further part of the plan was that defendants would continue to be liable to the Bank.

I find, as plaintiffs say, that they did not agree to an undertaking along the lines mentioned, although they were indifferent as to the identity of the holder of their mortgage. The hard fact of life is that the Bank of Delaware never agreed to accept the defendants' plan. The result is that plaintiffs paid $5,200 to defendants or their agents and spent money to improve the premises. Yet, they have the property subject to liens now aggregating more than $11,000, apart from the purchase money mortgage.

Defendants argue that plaintiffs had an additional obligation after the settlement. It is contended that plaintiffs were to cooperate with defendants in putting through the deal with the Bank of Delaware. Since I am satisfied that plaintiffs did not have any such obligation it follows that this contention is without merit. It is an ironic sidelight that at the time defendants argued that plaintiffs supposedly had this obligation, Mr. Keith admittedly was advising them to stay away from the Bank of Delaware.

Defendants next contend that time was not of the essence, since plaintiffs had come into possession and that the delay in clearing the liens was attributable to plaintiffs. I find that the delay was not due to any fault of plaintiffs. The assumed fact that defendants can now

clear the title is of no importance in view of the practicalities of plaintiffs' siutation and because defendants did not in fact clear the title within a reasonable time. It will be noted that the liens exceeded substantially the balance due on the purchase money mortgage.

While defendants' counsel does not make the point, since it is a matter of jurisdiction, I point out that the contract has been executed. In such a case plaintiffs' sole remedy is a suit at law on the warranties and not an action to rescind an equity unless there is fraud.

It seems to have been established as the law of Delaware for at least 100 years that after a property had been conveyed to the purchaser, the purchaser has no remedy except upon the covenants, no matter how defective the title may be, if there is no fraudulent concealment by the seller. See *Houston v. Hurley's Administrators, 2 Del.Ch.* 247. Whether the rule announced in the Houston case is too narrow, I need not decide. The crucial question here is whether the defendants can be charged with fraud entitling plaintiffs to rescind. To show fraud plaintiffs must demonstrate that defendants either misrepresented a material fact or concealed such a fact from plaintiffs at a time when they had a duty to disclose it. Plaintiffs must also show a justifiable reliance on defendants' representation or duty to disclose.

There can be no doubt that the existence of the liens here involved was a matter of vital importance to plaintiffs. Defendants themselves conceded that at the settlement they never told plaintiffs that they had liens against the property involved. They merely said that they advised plaintiffs that they had "obligations" to the bank. In view of my evaluation of the parties, I conclude that plaintiffs were not made aware of the impact of such obligations upon the land to be purchased. There may be a dispute as to whether the attorney involved made plaintiffs aware of the nature of defendants' obligations and their impact on the real estate to be purchased at or prior to the date of settlement. If there is such a factual issue I am compelled to resolve it in favor of plaintiffs.

Under the law laid down in *Houston v. Hurley's Administrators,* above, it is stated:

"Incumbrances must be paid off by the Vendor before he can compel payment of the purchase money, if discovered before the conveyance. 2 Sugd. on Vend. 124. After conveyance executed, if the vendor was aware of the defect of title, and concealed it from the purchaser, it is a fraud, and the purchaser will be relieved in [equity]. 2 Sugd. on Vend. 132."

In the Houston case the court said that the decisive question was whether the vendor had concealed a tax encumbrance, and thus committed a fraud. The court found that the purchaser did not know of the taxes and found that the vendor was guilty of fraud. However, the relief there ultimately granted was "colored" by the fact that the vendee remained in possession for a long time after discovery of the fraud. No such factor is here involved.

Again, in 55 *Am.Jur., Vendor and Purchaser*, § 71, it is said:

"* * * If a vendor should sell an estate, knowing that he had no title to it, or knowing that there were encumbrances on it of which the vendee was ignorant, the suppression of such a material fact, in respect to which the vendor must know that the very purchase implied a trust and confidence on the part of the vendee that no such defect existed, would clearly avoid the sale on the ground of fraud. The vendor impliedly represents that with the exception of the encumbrances he has disclosed, none exist. Also, a vendor by offering to sell land virtually represents, at least, that it is or shall be unimpaired by any act of his and free from encumbrances created by himself."

The foregoing quotation is particularly pertinent where, as here, defendants contracted to sell a title free and clear of all liens and encumbrances. The matter was discussed at settlement.

In *Black on Rescission and Cancellation*, § 38 it is stated that "As instances of fraudulent concealment justifying rescission or relief in equity, we may mention the case where a seller of property conceals the fact that there is a mortgage upon it." See also 33 *A.L.R.* at page 1029.

I am satisfied that the defendants personally did not advise plaintiffs of the two liens which existed upon the property and I am further satisfied that their actions and words entitled plaintiffs to believe that there were none. I further conclude that plaintiffs did not have actual knowledge of the liens at the date of settlement.

It is true as a general rule that a purchaser has constructive notice of any recorded encumbrance on land. See 45 *Am.Jur., Records and Recording Laws*, §§ 79, 87 ; 2 *Merrill on Notice*, § 949. However, it has been held that where a party is guilty of fraud or concealment of a material fact he is not relieved from such responsibility by the law of constructive notice. See 23 *Am.Jur., Fraud and Deceit*, §§ 162, 163 ; 3 Pomeroy's *Equity Jurisprudence*, (5th ed.) § 895. See also 33 *A.L.R.* at page 879.

Thus, defendants are guilty of material fraud unless plaintiffs are charged with notice of the liens by virtue of the fact that their attorney, Mr. Keith, admittedly had notice thereof prior to the settlement and indeed at the contract date. It is the ordinary rule that when a lawyer in examining a title discovers a cloud on it he thereby imposes notice upon his employer. See 3 *Merritt on Notice*, § 1210. The proposition just noted is based on the presumption that an agent will make disclosure to his principal. Just how far this rule applies when an agent is representing two bargaining principals is not free from doubt. What are the facts here?

Mr. Keith's own testimony was to the effect that he had no doubt that the bank would go along with the proposal to substitute the purchase money mortgage for defendants' liens and that he put the transaction through with the understanding that the defendant, James Jackson, would "work out his own solution of the problem with the bank." He thus permitted "his client" to pay $5,000 to defendants on nothing more than the expectation that defendants would work it out with the bank. How this approach can be said to have afforded plaintiffs any protection I do not see. In Kent County, at least, it is customary for the seller's attorney to provide the necessary releases to clear title. Where Mr. Keith fitted into this requirement is not clear. Also, Mr. Keith permitted the transaction to be consummated in order

that, to his knowledge, the defendants would have sufficient money to pay for the additional land needed to comply with the provisions of the contract. In the areas mentioned he abandoned plaintiffs' interest to the interest of defendants. Passing over its possible independent significance, this conclusion adds weight to the result next reached.

■ It is clear that where the common agent has an interest of his own to serve, the rule of presumed notice is modified. The modified rule is found in the following quotation from *Herdan v. Hanson,* 182 *Cal.* 538, 189 *P.* 440, 443:

> "* * * Ordinarily the knowledge of an agent is imputed to his principal. Civ.Code, § 2332. But, assuming that Reiss was the agent of the plaintiff, it is the rule that, where an agent is interested in the result of a transaction adversely to the interest of his principal, the rule of imputed knowledge on the part of the principal no longer obtains. 31 Cyc. 1595. In the present case, there was sufficient evidence to support the finding of the trial court that Reiss was acting as agent for defendant in securing the exchange in question. Since he was acting for defendant, upon a commission basis, his interest was adverse to plaintiff, and plaintiff cannot be charged with his uncommunicated knowledge of the actual conditions. On the other hand, having accepted the advantages obtained thereby defendant was bound by the representations and concealments of Reiss, his agent. *Bonnarjee v. Pike,* [43 *Cal.App.* 502,] 185 *P.* 479; *Civ.Code,* § 2330."

■ Mr. Keith was the common agent of plaintiffs and defendants. He must be held to have had a personal interest in consummating the sale at that time. This interest arose from the fact that his wholly owned real estate company obtained its commission only if the sale was made. The commission was in fact paid from the plaintiffs' payments. Mr. Keith therefore had a personal interest, adverse to the plaintiffs, in seeing that the transaction was completed. Obviously, the defendants, having accepted the benefits of the transaction, cannot be heard to complain. The plaintiffs cannot be charged with knowledge of Mr. Keith's notice of the liens under the circumstances here present. See *Herdan v. Hanson,* above.

█ The court is well aware of the common practice of adverse parties agreeing to use the same attorney, particularly in real estate settlements. An attorney, so acting, has a heavy burden to see that there is full disclosure and full protection of both parties. He must avoid any case where he may have a personal interest which might even appear to affect his already divided obligation.

[7] I conclude that plaintiffs are entitled to rescission.

Plaintiffs are entitled to a cancellation of the various documents and to a return of the $5,200 paid. They are also entitled to payment for improvements to the extent they have permanently increased the vendible value of the estate. 3 *Black On Rescission and Cancellation* (2nd ed.) § 636. I reject defendants' testimony that the "improvements" were a detriment rather than a benefit. I allow the sums appearing in plaintiffs' Exhibit 6 covering the floor, the gravel and the air conditioner, aggregating $513.55. I also allow the repairs to building and equipment, aggregating $70.41. These are allowed as repairs reasonably necessary for preservation of the property. See 3 *Black,* above, § 636 at p. 1542. The other items are disallowed. From these sums there must be deducted the reasonable rental (actually "use and occupancy") from the date plaintiffs took possession until they surrendered it (from March 21, 1959 to August 26, 1959). I think the reasonable rental on the basis of the available evidence would be $80 per month. Using this figure the rental comes to $413.33. Plaintiffs are therefore entitled to receive from defendants the sum of $5,783.96 less $413.33, or the net amount of $5,370.63. I have considered only the items claimed. Plaintiffs' claim will also be made a lien against defendants' properties.

Present order on notice.