[Civ. No. 16519. Second Dist., Div. Two. Dec. 6, 1948.]

RUPERT T. SIEVERT et al., Appellants, v. RAY
SIMONDS et al., Respondents.

Shibley, Wanzer & Litwin and Wadieh S. Shibley for
Appellants.

A. G. Ritter for Respondents.

McCOMB, J.—From a judgment in favor of defendants
after trial before the court without a jury in an action for
an accounting of an alleged partnership, plaintiffs appeal.
There is also a purported appeal from the order denying plain-
tiff's motion for a new trial.

## FACTS

Plaintiffs filed an action against defendants seeking to have a certain business declared a partnership and for an accounting. In the complaint it was alleged that on or about January 1, 1929, plaintiffs and defendant Ray Simonds, in Los Angeles, orally entered into and formed a copartnership agreement for the purposes of carrying on a business under the firm name and style of Simonds Machinery Company, and thereafter entered upon and continued to conduct and transact such copartnership business in such city under the aforesaid firm name.

The trial court found as follows:

"That none of the allegations of paragraph VI of plaintiff's complaint is or are true. The court finds that neither defendant Ray Simonds nor Grace Simonds at any time or at all entered into or formed a partnership agreement either orally or otherwise with said plaintiffs or said Ed Christensen, or all or any of them, for the purpose alleged by plaintiffs in said complaint, or for any purpose or at all, or under the firm name and style of Simonds Machinery Company, or any name or style whatsoever. The court finds that at all times mentioned in said complaint the business of Simonds Machinery Company was conducted by said Ray Simonds as sole owner thereof under the firm name and style of Simonds Machinery Company in said County of Los Angeles and elsewhere, and that plaintiffs and none of them have at any time had any interest in said business as partners or otherwise."

## QUESTIONS

First: *Was there substantial evidence to sustain the findings of fact of the trial court set forth above?*

This question must be answered in the affirmative. Defendant Simonds testified relative to plaintiff Sievert's association with him in substance as follows:

"I live in San Francisco and I am the owner of Simonds Machinery Company. I first started the Simonds Machinery Company in 1905 in San Francisco, buying and selling pumps, and at that time some other machinery. In 1927 I first established an office in Los Angeles and have been conducting such business down here since that time under the name of the Simonds Machinery Company, buying and selling pumping machinery. I first met Rupert T. Sievert in November 1927 in Los Angeles and employed him as a salesman. He and I agreed together on his salary of $125 or $150 a month, I

don't remember which. He remained with me until he left eventually in 1939. At first he was a salesman. Later he was made Manager, around 1929. I specified his duties, that he was to be manager and perform the duties which usually went with the manager. He was paid a salary regularly and in 1929 I told him of the profit-sharing arrangement we had in San Francisco and that I would pay him on the same basis, and from that time on he shared in the profits of the business. When I found it necessary to let him go, I wrote him a letter, which is in evidence.''

In addition there was received in evidence a receipt executed by plaintiff Sievert after he had been discharged from defendant's employ dated October 16, 1939, reading as follows: ''Received of Simonds Machinery Company the sum of $335.51 in full settlement, satisfaction, and discharge of all claims and demands for services rendered.''

Relative to Genevieve Paar's claim, defendant Simonds testified in substance thus:

''I met her in the early part of 1929 at the office in Los Angeles. She was then Genevieve Bachellerie. I engaged her as a bookkeeper and made arrangements with her as to salary. At no time later did I have her assume any other duties than those which she originally assumed. Those duties were keeping the books, attending collections, writing letters, making deposits at the bank, drawing checks and signing checks, and taking full charge of the office routine. She reported frequently as to what was going on down here, as did Sievert. Mrs. Paar's salary was increased from time to time during the period that she was with me and she also received a share in the profits right up until the time she left. The other employees down here also received a share in the profits. I told Sievert that we had the same policy in San Francisco, that we had it there since 1905, and told him of the advisability of it for the company and for the employees. On a number of occasions I sent money from the San Francisco office down to Los Angeles for use in the business here. I sent money down at the time the building was put up. I borrowed it from the Bank of California in San Francisco and used it here. The business here at all times made money in a small amount every year except 1932. During 1932 I sent money down from San Francisco for use in the business here. Nobody else at any time ever contributed money to this business. I did not have any conversation at any time with anybody in which I referred to Mr.

Sievert or Mrs. Paar or Mr. Christensen as a partner in the business. I did refer to them as associates or as members of the family or as employees. I used all those terms.

"On the occasion when Mrs. Paar left my business I had a conversation with her in my office. I asked her if she knew the contents of the telegram that Mr. Paar had sent to me. She said no she did not know that he had sent a telegram, and I showed her a copy of the telegram and asked her what it was all about. She said that she did not know of the letter or the telegram that had been sent to me. I told her that I did not see any reason why her husband should be interfering in the business; she was my employee; Mr. Paar had never been my employee and I didn't like anyone trying to upset things in the way he had started to do; that heretofore I had always been able to settle the affairs direct with employees and I thought he was very much out of order. She said very little. There were several conversations had after that. I finally told her that I was sick and tired of this interference and it would no longer be possible for her to be holding the position she had with our company in Los Angeles. She said: 'Well, it looks to me as if it is either a case of husband or job.' And I said: 'Genevieve, that is it exactly.' She said then: 'I suppose I should turn in my key if you want it.' And I said: 'I think we should have it.' She gave me the key and I handed it to Mr. Waters, who was there. I told her I would see that she was paid, after she left, her next month's salary and at first she said she didn't think she wanted it and afterwards said yes. During the time she worked for me she was at all times a very faithful employee and did her work very well.

"With reference to Mr. Paar and his activities in connection with this business, for apparently no reason that I could see he would come into the office in San Francisco and would bring up one matter or another. When I came down to Los Angeles he would see that he saw me and talk about various things, what he had been doing, where he had been. I received various communications from him which have been introduced in evidence. I don't remember having any conversation with Mr. Paar at the Biltmore Hotel and did not at any time make a statement in which I told him in substance or effect that I had given him or Mrs. Paar an interest in the business."

Relative to the alleged claim of the administrator of the estate of Edward Elmer Christensen, the record is devoid of any evidence that the decedent at any time ever claimed to be a partner with defendants.

The foregoing evidence clearly sustains the questioned findings of the trial judge, which findings, being supported by substantial evidence, will not be disturbed by an appellate court. (*Kersch* v. *Taber*, 67 Cal.App.2d 499, 504 [154 P.2d 934].)

■ The fact that some of plaintiffs were employed by defendants and were to share in a division of the profits did not require the trial court to conclude that a partnership existed between such parties. (*Spier* v. *Lang*, 4 Cal.2d 711, 716 [53 P.2d 138].)

■ Second: *Did the trial judge commit prejudicial error in sustaining defendants' objection to the following offer of proof of plaintiffs?*

"I offer to prove by this witness [Mr. Paar] that from about the year 1941 on this witness performed valuable services for the Simonds Machinery Company of Los Angeles, that he secured priorities if needed, and the necessary materials for the Simonds Machinery Company; that he obtained a Notary's commission and laid out certain expenditures in connection therewith, for the purpose of notarizing papers in connection with priority applications, and that during the war, that is, from 1941 until approximately December, 1944, he spent considerable time and effort in connection with the Simonds Machinery Company, that he did so without any compensation upon representations made to him by Mr. Simonds that the wife of this witness, Mrs. Genevieve Bachellerie Paar, was a partner and co-owner of the business and that the work that Mr. Paar was doing was simply enhancing the property of his wife, Mrs. Paar; that offer, your Honor, is made generally and specifically as to the statement which we offer to prove."

This question must be answered in the negative. The purpose of the foregoing offer of proof according to plaintiffs was to attempt to show that William Paar performed acts beneficial to defendants' business in order to enhance the value of his wife's interest therein. The mere statement of the purpose for which the evidence was offered shows that it was immaterial. Mr. Paar was at no time employed by defendant Simonds. Therefore, since the trial court found, supported by substantial evidence, that his wife was not a partner in the business the value of the business was entirely immaterial so far as such plaintiffs were concerned.

In view of our conclusions it is unnecessary to discuss other questions presented by plaintiffs. A partnership not

existing between the parties, plaintiffs were not entitled to an accounting.

An order denying a motion for a new trial in a civil action is nonappealable. (*Title Ins. & Trust Co.* v. *Graham,* 44 Cal. App.2d 660, 663 [112 P.2d 935].) Hence the purported appeal from such order is dismissed.

The judgment is affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied December 21, 1948, and appellants' petition for a hearing by the Supreme Court was denied February 3, 1949.