653 P.2d 356

**FACIT–ADDO, INC., a New York corporation, Plaintiff-Appellee,**

v.

**DAVIS FINANCIAL CORPORATION, an Arizona corporation, Defendant-Appellant.**

No. 1 CA–CIV 5410.

Court of Appeals of Arizona, Division 1, Department B.

May 4, 1982.

Donald W. Lindholm, Phoenix, for plaintiff-appellee.

Brown & Bain by Michael C. Jones, Richard Calvin Cooledge, Phoenix, for defendant-appellant.

## OPINION

Richard M. DAVIS, Judge, Pro Tem.

The appellee Facit-Addo, Inc. commenced this action against the appellant Davis Financial Corporation and another corporation, Business Communications Equipment, Inc., to recover the price of 93 business machines shipped to an alleged partnership consisting of the two defendants. Appellee moved for summary judgment contending, *inter alia,* that appellant was liable as a "partner by estoppel" pursuant to the common-law rule embodied in A.R.S. § 29–216. The trial judge agreed with this theory and rendered a summary judgment for appellee which included a determination of finality pursuant to Civil Rule 54(b). We conclude upon review that there are genuine issues of material fact which preclude summary judgment, and we accordingly reverse.

## FACTS

The appellee Facit-Addo is a national distributor of business machines. It characteristically sells its machines to either "ex-

clusive" or "non-exclusive" dealers who in turn sell the machines at retail. An "exclusive" dealer is such to the extent that it is the only seller of a certain Facit product line or lines in a given geographical area; a "non-exclusive" dealer is one of two or more dealers in a given area to which Facit-Addo sells its lines for resale at retail. The Phoenix area was within the sphere of Facit-Addo's Mountain States marketing region. Larry Richard Bartlett was the regional manager of sales to dealers and dealer activities in the area.

The important events in this litigation occurred in the early part of 1978. Appellant's co-defendant, Business Communication Equipment Inc. (hereinafter BCE), was based in Phoenix and had been a non-exclusive dealer for three of Facit-Addo's major lines (typewriters, calculators and invoicing machines) since 1976. BCE was a family-oriented corporation in which Ken Malone, its president in early 1978, and his in-laws were interested. Malone was in the process of dissolving his marriage in early 1978, and as time went on he felt increasing pressure from his in-laws to resign as president because of the pending dissolution.

The appellant Davis Financial Corporation is a Phoenix-based entity which frequently functions as a factor, purchasing its clients' accounts receivable. It also acts as a management consultant. Davis Financial had been acting as a factor for BCE since July 1, 1977. It held as collateral for its factoring operations with BCE a security interest in all of BCE's inventory, as well as in its accounts receivable. Bertram J. Trobman ran the Phoenix office as Davis Financial. The dealings between Davis Financial and BCE were based upon the personal relationship of Trobman and Ken Malone.

In January, 1978, BCE had a relatively large and long-standing debt to Facit-Addo approximating $15,000. Prior to mid-January, Malone and Bartlett had discussed the possibility of BCE becoming the exclusive Phoenix dealer for certain major Facit-

Addo product lines. During these discussions, according to Bartlett, Malone had indicated the possibility of BCE affiliating in some manner with a financially stronger second party.

On January 16, 1978, Bartlett wrote to Malone stating that certain desirable product lines would be available to BCE on an exclusive basis. The letter detailed sales quotas for the various lines offered on an exclusive basis which would have to be met by BCE in order to remain an exclusive dealer. There was an indication that another Phoenix dealer in some of the lines, Walsh Brothers, would be phased out as a dealer. There was no reference in the letter to appellant or to any specific proposed partner or backer. The letter closed with the request: "Please advise me if this is acceptable and I will arrange for the proper paper work."

On March 7, 1978, Bartlett addressed another letter to BCE, stating saliently that he and Facit's credit manager were "excited" about the possibilities for an exclusive arrangement with increased capital but that BCE would first have to bring its account current, "immediately." There is a reference in the letter to a potential 100 machine order at prices favorable to BCE. Although Bartlett testified at his deposition that he had spoken over the telephone with Trobman about the project and had taken Davis Financial credit information from him, there is again no reference in the letter to either Davis Financial or Trobman.

Bertram Trobman testified that at various times between January and March 6, 1978, he and Ken Malone held discussions concerning a possible venture to exploit an exclusive Facit dealership. The concept which evolved, according to Trobman, was a corporation in which Malone would own two-thirds and Davis Financial one-third of the stock. Davis Financial or its principals would guarantee a loan to the corporation in return for which Malone would pledge one-half of his shares to Davis Financial until the loan was paid off.[1] Trobman de-

---

1. This was Davis' testimony. Bartlett testified that Malone told him on March 16, 1978 that he had been forced to give up two-thirds of the ownership in the venture to Davis Financial.

nied that Davis Financial was ever to be an equity capital investor. At some time in March Trobman and Malone agreed that the proposed venture would be called "American Typewriters."

Bartlett testified in deposition that he talked to Trobman on the telephone in early 1978 and that at one point Trobman gave him certain credit information on Davis Financial. Trobman denied ever talking to Bartlett prior to their face-to-face meeting on March 16. A Facit employee in charge of customer credit applications testified that she received Davis Financial credit information in March. No basis for the furnishing of this information apart from the proposed "American Typewriters" venture appears in the present record.

On March 16, 1978, Bartlett met with Trobman and Ken Malone in the offices of Davis Financial in Phoenix. Bartlett's version of this meeting and Trobman's version differ sharply. Bartlett's testimony suggests a virtually certain and imminently operational marketing partnership between BCE and Davis Financial. It is also undisputed that during this meeting, Trobman wrote a check in behalf of Davis Financial to Facit in the amount of $15,821.24 to eliminate the existing balance owed to Facit by BCE.

Trobman's testimony, however, gave a markedly different context to the meeting. At his deposition Trobman testified in part as follows:

Q. [By appellee's counsel]: To your knowledge, was Facit aware of the proposed corporate structure between yourself and Malone for the distributorship of Facit products?

A. *To my knowledge, no.*

Q. You had never spoken to anyone at Facit about that?

A. No.

Q. Malone had never told you that Facit was going to go along with him now that he had your financing?

A. I had no direct conversations with regard to the structure. Dick Bartlett visited Phoenix and my office with Ken Malone. But there was no discussion of the structure of the company or anything of that nature. There was discussion of *Ken's getting the exclusive rights* and how they were going to deal with that.

Q. Had you ever met Dick Bartlett prior to that meeting?

A. No.

      *      *      *      *      *      *

Q. Would you relate for me the conversation that you and Mr. Bartlett and Mr. Malone had at that meeting.

A. A lot of the conversations dealt with how *Ken and his sales manager* were going to operate with regard to the sale of Facit Typewriters.

      *      *      *      *      *      *

So it's not untypical for me to have a meeting with a client when they are negotiating things or lining up credit. So I got in that meeting. And *it was essentially a discussion of the expansion of Business Communications.*

The areas that were covered were their method of selling as to whether they would go door to door or do it out of the store. The question of the name came up. Several names were offered. My recollection is that Dick Bartlett indicated that it could not use the name Facit in their name.

At the last part of the meeting, or as the meeting was over, Dick indicated a concern for paying the payment of their most recent statement or bill or delinquency. Business Communications was behind by approximately $15,000. *I asked Ken if he wanted us to advance the funds and at the time I asked him to sign a copy of the voucher to indicate that it was under advance under BCE's loan agreement* and gave Dick a check, Davis Financial Corporation check, approximately $15,000.

There was no discussion, to my recollection, with regard to the structure of the company or participation in the company.

It was more of a management discussion on the operation of a business.

\* \* \* \* \* \*

Q. Why did you have the meeting with Bartlett on that day?

A. Ken set up the meeting to discuss the proposal of Facit *to give him* an exclusive right in the city or state of Arizona for a Facit line.

Q. Well, why was that done in your office, if you know?

A. Oh, a combination of reasons. (A) we will frequently do things like that in our office with clients and (B) *there was the possibility or even probability that we would be involved,* based on what I told you of our meeting of March 6th, with the company.

Q. In other words, as of the time of the meeting in your office on the 16th with both Bartlett and Malone, it was the intention insofar as you know of both yourself and Malone to still form a corporation between Davis and Malone, correct?

A. That is correct.

Q. *And yet none of that was indicated to the Facit* representative during that meeting, as you recall?

A. *That is correct.* (Emphasis added.)

Shortly after the March 16, meeting, Trobman presented a $50,000 loan application in behalf of "American Typewriters" to a branch of First Interstate Bank. At approximately the same time, Malone telephoned in to Facit an order for 93 business machines. Shortly prior to shipment by Facit on March 28, Facit was directed to deliver the machines to a warehouse owned by Davis Financial. This direction was made by Ken Malone. Facit's packing bill for the March 28 shipment indicates the consignees as "American Typewriters." Facit's invoice was directed to "Business Communications Equ. GX DBA American Typewriters." Ken Malone apparently left Phoenix on or about March 30, never to return. His present whereabouts are unknown. On March 28, Davis Financial gave notice to BCE of the termination of its factoring agreement. Davis subsequently noticed seizure of the 93 machines shipped

as collateral under its agreement and the machines were thereafter sold at a nonjudicial sale pursuant to the security provisions of the agreement.

## THE LEGAL ISSUES

Initially, it should be pointed out that while Facit also alleged as a basis for recovery general equitable estoppel and "estoppel by silence", the trial court ruled only upon appellee's theory of partnership by estoppel. Appellee has not undertaken to uphold the judgment by reference to its other theories. The scope of our decision is limited accordingly.

We are called upon to consider three issues. They are as follows:

(A) How is the burden of proof defined?

(B) Was appellant entitled to a partial summary judgment of nonliability as a partner by estoppel?

(C) Does the record eliminate any material fact issue and dictate judgment for Facit on its partnership by estoppel theory?

We consider these in order.

### A. Burden of Proof

With their discussion of the elements of the action the parties have extensively briefed the question of what quantum of proof is required to impose liability as a partner by estoppel. While a definitive answer to each aspect of the issue may be less than strictly essential to determination of the instant appeal, it will in view of our decision provide guidance for the trial court on remand.

■ Arizona's version of the Uniform Partnership Law defines liability as a partner by estoppel in A.R.S. § 29–216 as follows:

§ 29–216. Partner by estoppel

A. When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any

such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

1. When a partnership liability results, he is liable as though he were an actual member of the partnership.

2. When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

B. When a person has been represented to be a partner in an existing partnership, or with one or more persons not actual partners, he is an agent of the persons consenting to such representation to bind them to the same extent and in the same manner as though he were a partner in fact, with respect to persons who rely upon the representation. Where all the members of the existing partnership consent to the representation, a partnership act or obligation results; but in all other cases it is the joint act or obligation of the person acting and the persons consenting to the representation.

This is essentially a codification of the common-law rule of liability. *See,* for a helpful summary of the relevant legal principles, 59 Am.Jur.2d, Partnership §§ 67–75 (1971).

The parties are in substantial agreement that the following elements must be shown to establish liability as a partner by estoppel:

(1) words or conduct by or attributable to the party to be charged amounting to a representation of partnership;

(2) detrimental action taken by the plaintiff in reliance upon the representation;

(3) the reasonableness of such reliance.

■ Appellant, citing *Merwin v. Ziebarth,* 252 N.W.2d 193 (N.D.1977), first argues that where one seeks to show partnership by estoppel circumstantially, the evidence must be inconsistent with any hypothesis other than the existence of a partnership. Appellant alternatively contends that the standard of proof for partnership by estoppel must be clear and convincing evidence. Appellant cites *Smalley v. Baker,* 262 Cal.App.2d 824, 69 Cal.Rptr. 521 (1969) in this regard.

As to the "wholly consistent hypothesis" test of *Merwin v. Ziebarth, supra,* we think a test of this nature is unnecessarily stringent and complex. *Cf. State v. Harvill,* 106 Ariz. 386, 476 P.2d 841 (1970). We accordingly reject it.

In regard to a "clear and convincing" test, it is true that the California courts have sometimes articulated such a test in cases involving partnerships. *See Smalley v. Baker, supra.* We find, however, no consistency in this regard. *Cf., e.g., Matson v. Jones,* 272 Cal.App.2d 826, 77 Cal.Rptr. 717 (1969); *Sievert v. Simonds,* 89 Cal.App.2d 34, 200 P.2d 95 (1948); *Kloke v. Pongratz,* 38 Cal.App.2d 395, 101 P.2d 522 (1940).

In this jurisdiction, in cases involving claims of equitable estoppel generally, a standard of "clear and satisfactory" proof prevails. *Joy Enterprises, Inc. v. Reppel,* 112 Ariz. 42, 537 P.2d 591 (1975); *Desert Vista Apartments, Inc. v. O'Malley Lumber Co.,* 103 Ariz. 23, 436 P.2d 479 (1968); *Knight v. Rice,* 83 Ariz. 379, 321 P.2d 1037 (1958). We find no Arizona case which squarely addresses the quantum of proof in a partnership-by-estoppel context. *See,* however, *Rouss v. Racket Store,* 19 Ariz. 7, 164 P. 1182 (1917), where the issue was whether the defendant La Prade was a partner, referring to a search of the record for "substantial" evidence.

While there are some partnership cases in other jurisdictions which apply a standard of "clear and convincing" or "clear and satisfactory" evidence, these are more apt to involve the relations of partners *inter se.* In the words of one authority, " * * * as to third persons, less proof is required to show

a partnership than as between the parties themselves." *Minder v. Gurley,* 37 Wash.2d 123, 130, 222 P.2d 185, 189 (1950). The same distinction is noted in C.J.S., Partnership § 57:

> While it has been held that a partnership must be established by a preponderance of the evidence, as a general rule, stronger evidence is required to establish a partnership as between alleged partners than in an action by a third person. Thus, one who alleges a partnership between himself and another must establish its existence by clear, cogent, satisfactory, and convincing proof, especially if the other party to the agreement is dead, whereas it has been held that, in an action by a third person, it may be sufficient if the evidence reasonably tends to establish a partnership. (Footnotes omitted.)

The lesser quantum appears to have been applied in the partner by estoppel cases. C.J.S., Partnership, § 58. We find no contrary indications among the Arizona cases. *Cf. Mercer v. Vinson,* 85 Ariz. 280, 336 P.2d 854 (1959); *May v. Sexton,* 68 Ariz. 358, 206 P.2d 573 (1949).

The question thus boils down to whether the burden of proof as to partnership by estoppel shall be consistent with the general law of partnership, or with the general law of estoppel. While we perceive some reason for opting for consistency with the general law of estoppel, e.g., instructing a jury in a multiply-pleaded case like the present one, we believe that the desirability of maximum uniformity within the broader outlines of the law is an overriding objective, in the absence of a compelling case made for the exceptional quantum of proof. We find no such compelling case made here. While our version of the Uniform Partnership Act states that "the law of estoppel shall apply", A.R.S. § 29–204, we think the reference there is to the substantive elements rather than to burden of proof. We accordingly conclude that the plaintiff in a claim pursuant to A.R.S. § 29–216 must prove his case by the usual quantum of a preponderance of the evidence.

### B. Appellant's Claim for Summary Judgment

A major contention in appellant's briefs is that appellee has failed to show representations sufficient to support recovery. While the contention is for the most part waged defensively as a reason for reversing the summary judgment in favor of appellee, the necessary corollary would be a summary judgment in appellant's favor, as it indeed suggests.

The specific contention advanced by appellant is that there is no evidence of any *present* as opposed to possible or probable *future* partnership or other combination of BCE and Davis Financial. We have no difficulty in reading the deposition of Bartlett and viewing circumstances cited by appellee as indicating a present partnership. Indeed, the basis for liability is explicit.

Bartlett testified that he had a telephone conversation with Trobman in which Trobman stated (inferentially in behalf of Davis Financial) that he "would be going into partnership" with BCE. Bartlett stated that Trobman gave Bartlett Davis Financial credit information at this time. In Bartlett's mind, each of the subsequent acts of Davis were in furtherance of that explicit objective, which was logically consummated with the sales order for 93 machines, an order that was far beyond the credit capabilities of BCE alone. No alternative basis for the furnishing of credit information is suggested. It is only Trobman's testimony as to the state of affairs among the parties at the March 16, meeting, that gives rise to an issue of fact. Thus, even without fine attention to the manner in which we would view inferences favorable to Facit, there is a clear *prima facie* case for recovery on the basis of the partnership by estoppel.

### C. Was the Appellee Entitled to Summary Judgment?

Unless the facts are susceptible of but a single conclusion, liability as a partner by estoppel is a question for a properly instructed finder of fact. *See Mercer v. Vin-*

son, *supra; Kitchell Corp. v. Hermansen,* 8 Ariz.App. 424, 446 P.2d 934 (1968).

While the *prima facie* case for appellee is clearly sufficient, Trobman's testimony, quoted in part above, makes this a two-sided controversy at this stage. Viewed indulgently as we must view it, Trobman's testimony negates any present involvement by Davis Financial in a partnership with BCE and similarly tends to negate the certainty of any future partnership. We think that, bearing in mind that the court's function upon a motion for summary judgment is to ascertain the existence of a factual issue rather than to resolve it, it cannot be said on the present record that a reasonable juror might not conclude on the basis of Trobman's testimony that although Facit had reasons for believing that Davis Financial and BCE would enter into partnership, Davis Financial withheld any such representation and was without knowledge that any such representation might have been made ostensibly in its behalf[2] so that the subsequent shipment was made from Davis Financial's point of view with only BCE actually "on the hook." It necessarily also follows that the elements of reliance by appellee and the reasonableness of any such reliance are similarly issues to be resolved by the finder of fact. In sum, the material facts on the present record are not beyond "the slightest doubt." *Peterson v. Valley National Bank,* 90 Ariz. 361, 368 P.2d 317 (1962).

For these reasons, the judgment of the superior court is reversed and the cause is remanded for further proceedings consistent herewith.

JACOBSON, P.J., and GRANT, J., concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.

2. *See H–K Corp. v. Chance,* 25 N.C.App. 61, 212 S.E.2d 34 (1975), and *cf. Rouss v. Racket*