550 P.2d 1104

Clifton C. MORLEY and Mary E. Morley, husband and wife, Appellants,

v.

J. PAGEL REALTY & INSURANCE, a corporation and Shirley Tripett, Appellees.

No. 2 CA–CIV 2099.

Court of Appeals of Arizona, Division 2.

June 22, 1976.

Rehearing Denied July 16, 1976.
Review Denied Sept. 14, 1976.

Miller, Pitt & Feldman, P. C., by Jeffrey H. Schwartz and Stanley G. Feldman, Tucson, for appellants.

Russo, Cox, Dickerson & Cartin, P. C., by Thomas G. Cox, Tucson, for appellees.

OPINION

KRUCKER, Judge.

This was an action by appellants, Clifton and Mary Morley, against appellees, J. Pagel Realty & Insurance (Pagel Realty), Shirley Tripett, a real estate salesperson employed by Pagel Realty, and Western Surety Co., the surety on Pagel Realty's bond. Also named as defendants were Lawrence P. Hayden, dba Old West Realty and Lawrence P. Hayden and JoAnne Hayden, husband and wife.[1] From an adverse judgment rendered by the trial court on stipulated facts, appellants have perfected this appeal. We reverse.

Appellants owned a three-bedroom home in the Warren area of Bisbee, Arizona.

1. The Haydens and Old West Realty are not before this court on appeal.

On March 28, 1973, they listed their property for sale with Pagel Realty through appellee Shirley Tripett. The asking price was $15,000, payable as follows: "DOWN-TERMS $3,000 will carry at 8% interest with 15 yr Stop." Pagel Realty's commission was to be six percent.

In April of 1973, Tripett obtained a written offer from Lawrence and JoAnne Hayden. It provided for a purchase price of $15,000, with a $2,500 down payment and the balance payable as follows:

"$12,500.00 by buyers executing in favor of sellers a demand note payable at not less than $100.00 per month. Buyers reserve the right to pay more than $100 per month on said note without penalty. Interest rate on the note will be 8%. The note will be all due and payable 10 years from date of closing."

Tripett showed the written offer to appellants without giving them any advice concerning its contents. On April 20, 1973, appellants signed the written offer.

The closing took place on May 14, 1973. On that date Lawrence and JoAnne Hayden executed a promissory note for $12,500, naming appellants as payees. The form used for the note included the words "This note is secured by a mortgage on real property," but these words were crossed out.

Sometime during the next six months the Haydens deeded the property to a third party for cash, defaulted on the note, and went bankrupt. Appellants thereafter brought this action against Pagel Realty and Tripett, alleging that they had breached their fiduciary duty to appellants, had negligently represented appellants in the sale of their land, and were grossly negligent in failing to protect appellants' interests.

On January 15, 1975, counsel for the parties submitted the case to the trial court on the following stipulation of facts:

"That the defendant Triplett [sic], a licensed real estate salesman, acting as agent for the defendant, Pagel, carried a Deposit Receipt and Agreement, which is in evidence, to the plaintiffs, Worley [sic] and delivered it to them without giving any advice concerning the contents of the agreement."

Counsel also stipulated that the only legal issue was:

". . . does the issue of giving advice by the defendant, or any of them, to the plaintiffs, to the effect that the promissory note should be secured by a realty mortgage constitute the illegal practice of law; and, if so, is that a complete defense to the plaintiff's claim?"

Counsel also stipulated that if appellees were held liable, the amount of damages would be $11,900.00.

On June 3, 1975, the trial court ruled in favor of appellees by minute entry. On September 17, 1975, formal judgment was entered which stated:

". . . the court concludes and finds that the giving of advice by the defendants, or any of them, to the plaintiffs, to the effect that the promissory note should be secured by a Realty Mortgage, would constitute the illegal practice of law."

This appeal presents two distinct question for our consideration: (1) independent of any question of unauthorized practice of law, whether a real estate agent who shows his clients a written realty purchase offer that contemplates satisfaction of a substantial portion of the purchase price with an unsecured promissory note has a duty to tell his clients that the purchase price should be secured by a mortgage; and (2) whether a real estate agent who tells his clients that the purchase price of their property should be secured by a mortgage thereby engages in the unauthorized practice of law.

We recently discussed the duties of a seller's real estate broker in *Vivian Arnold*

*Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973):

"A real estate agent owes a duty of utmost good faith and loyalty to the principal, and one employed to sell property has the specific duty of exercising reasonable due care and diligence to effect a sale to the best advantage of the principal—that is, on the best terms and at the best price possible. *Haymes v. Rogers*, 70 Ariz. 257, 219 P.2d 339 (1950); 12 Am.Jur.2d Brokers § 96 (1964). He is also under a duty to disclose to his client information he possesses pertaining to the transaction in question. *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969)." 19 Ariz.App. at 293–94, 506 P.2d at 1078.

*See, Ledirk Amusement Co. v. Schechner*, 133 N.J.Eq. 602, 33 A.2d 894 (1943), *aff'd*, 135 N.J.Eq. 209, 37 A.2d 823 (1944); *Bonanza Real Estate, Inc. v. Crouch*, 10 Wash.App. 380, 517 P.2d 1371 (1974).

No Arizona decisions have delineated the exact extent of a real estate broker's duty to his client in a situation like the one that occurred here.[2] However, several analogous decisions from other jurisdictions suggest what that duty should be. The Oregon courts have said that a real estate broker must make a full and understandable explanation to his client before having him sign any contract. *Starkweather v. Shaffer*, 262 Or. 198, 497 P.2d 358 (1972) (dictum). As the court stated in *Prall v. Gooden*, 226 Or. 554, 360 P.2d 759 (1961):

"The broker should make his explanation commensurate with the education and understanding of the people he is dealing with, and if he is unable to give competent advice he should allow them to obtain it elsewhere." 360 P.2d at 762.

In *Duncan v. Barbour*, 188 Va. 53, 49 S.E.2d 260 (1948), a real estate broker submitted an amended purchase offer to his client without disclosing that it failed to accord with the client's wishes in three crucial respects. The court upheld denial of the broker's commission. It stated:

". . . it was the duty of the agent to disclose to his principal the vital differences in the terms and conditions of sale contemplated by the parties. This duty was not discharged by simply handing to the owner an unsigned contract and directing his attention to one specific change. It was his duty to inform his principal of all facts which might influence his principal in accepting or rejecting the offer." 49 S.E.2d at 265.

In *Reese v. Harper*, 8 Utah 2d 119, 329 P.2d 410 (1958), defendant was a farmer with little business acumen. He owned a farm that was subject to $15,000 in liens. He listed the farm for sale with plaintiff, a real estate broker, and asked $45,000 for it. Plaintiff showed defendant a third party's written offer of $30,000, which stated on a separate line that there were to be no encumbrances. Defendant understood that the purchaser would pay him $30,000 and also pay off the liens; in fact, the offer required defendant to discharge the liens out of the $30,000 purchase price. Plaintiff did not explain the terms of the offer, and defendant signed it after cursorily examining it. Defendant later refused to go through with the deal, and plaintiff sued for his commission. The court affirmed judgment for defendant. It rejected plaintiff's argument that he had no duty to "coddle and spoonfeed" defendant, holding that plaintiff violated his duty to:

". . . apply his abilities and knowledge to the advantage of the man he serves; and to make full disclosure of all facts which his principal should know in transacting the business." 329 P.2d at 412.

2. *Cf., Leigh v. Loyd*, 74 Ariz. 84, 244 P.2d 356 (1952), in which a vendor's broker was held liable in damages for intentionally remaining silent while his client signed certain legal instruments under a serious misapprehension of their true nature.

■ From *Prall* and *Starkweather* we learn that a real estate broker must make some kind of explanation of the offer he procures for his client. *Duncan* tells us that if the offer varies from the terms of the listing the broker must so inform his client. And from *Reese* we discover that a person acting as broker for an inexperienced client must employ all his professional ability and knowledge to make sure the client understands the "facts" that will materially affect his desire to sell in accordance with the terms of a purchase offer. *Cf., Burien Motors, Inc. v. Balch*, 9 Wash.App. 573, 513 P.2d 582 (1973). In the case at bench, appellants seek to hold appellees liable for failing to inform them that the Haydens' offer contemplated no security and that a mortgage should be required. Although this information might be beyond the average person, it is common knowledge in the real estate business. We think that as part of appellees' duty to effect a sale for appellants on the best terms possible and to disclose to them all the information they possessed that pertained to the prospective transaction, appellees were bound to inform appellants that they should require security for the Haydens' performance.

The second question we are faced with is whether a real estate broker who tells his client he should require a mortgage thereby engages in the unauthorized practice of law. In *State Bar of Arizona v. Arizona Land Title & Trust Co.*, 90 Ariz. 76, 366 P.2d 1 (1961), *supplemented*, 91 Ariz. 293, 371 P.2d 1020 (1962), our Supreme Court gave the following general definition:

"... those acts, whether performed in court or in the law office, which lawyers customarily have carried on from day to day through the centuries must constitute 'the practice of law.'" 90 Ariz. at 87, 366 P.2d at 9.

In the *State Bar* case the court said such acts include the direct or indirect giving of advice relative to legal rights and liabilities.

■ In determining what constitutes "legal advice" or "acts . . . which lawyers customarily have carried on from day to day throughout the centuries," the following language from *Gardner v. Conway*, 234 Minn. 468, 48 N.W.2d 788 (1951) is helpful:

"The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do every day in their practice may also be done by others without wrongful invasion of the lawyers' field.

\* \* \* \* \* \*

The development of any practical criterion, as well as its subsequent application, must be closely related to the purpose for which lawyers are licensed as the exclusive occupants of their field. That purpose is to protect the public from the intolerable evils which are brought upon people by those who assume to practice law without having the proper qualifications." 48 N.W.2d at 794.

■■ Appellees intimate that appellants would require real estate brokers to discuss with their clients the merits of all the various available security devices. We do not read appellants' argument so broadly. The only duty appellants contend for is a duty to warn the untutored vendor that he should require some form of security in the contract of sale. The giving of such banal advice by real estate brokers creates no danger to the public. We hold that under the circumstances that arose in this case, a real estate broker would not engage in the unauthorized practice of law by telling his clients that the purchase price of their property should be secured by a mortgage.[3] Our holding today is a narrow one and should not be read to extend beyond the situation presented by the facts

---

3. Accordingly, we need not decide whether a determination that such advice constituted the unauthorized practice of law would bar appellants' claim.

of this case. It is reinforced by Art. 26, § 1 of the Arizona Constitution. Having achieved, by virtue of this provision, the right to prepare any and all instruments incident to the sale of real property, including promissory notes, real estate brokers and salesmen also bear the responsibility and duty of explaining to the persons involved the implications of these documents. Failure to do so may constitute real estate malpractice.

Reversed and remanded with directions to enter a judgment in favor of appellants in the amount of $11,900, plus costs.

HOWARD, C. J. and HATHAWAY, J., concurring.