798 P.2d 1327

**Henry E. MANLEY and Donna L. Manley, and Arthur Johnson, Plaintiffs–Appellants,**

v.

**TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, a California corporation, Defendant–Appellee.**

**No. 1 CA–CIV 9459.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 21, 1989.

Reconsideration Denied As Modified on Grant of Clarification June 8, 1990.

Review Granted Nov. 6, 1990.

Jennings, Strouss & Salmon by Jefferson L. Lankford, Timothy W. Barton, Michael R. Palumbo and Carol A. Cluff, Phoenix, for plaintiffs-appellants.

Streich, Lang, Weeks & Cardon, P.A. by Don P. Martin, Robert E. Miles, E. Jeffrey Walsh and Marcia Horn Yavitz, Phoenix, for defendant-appellee.

## OPINION

GRANT, Chief Judge.

This is an appeal from summary judgment and dismissal in favor of the defendant title company on a nine-count complaint alleging tortious conduct and breach of various contractual and fiduciary duties in connection with defendant's actions as an escrow agent and title insurer.

## FACTS

In 1983, Henry and Donna Manley listed their bar-restaurant and house, located on six acres of land in Glendale, with real-estate agents Steve Willbanks and George Stika. Stika put together a deal in which the Manleys would sell their property to Pyramid I, a joint venture allegedly comprised of four people: Mark Masias, Domenico Spano, Dennis Noss, and Frank Clemente (Pyramid).

The written sales contract provided that Pyramid would purchase the property for $500,000. Pyramid would pay the Manleys a down payment of $125,000; the $375,000 balance would be paid over five years and would be evidenced by a promissory note secured by a deed of trust. Among other provisions, the contract stated that escrow would include both a partial subordination clause drawn up by the buyers' attorney and a letter of intent as to "amount & use" and that the sellers were aware that "buyers intend to construct dinner house & apts."

The parties employed Ticor Title Insurance Company of California (Ticor) as their escrow agent. Ticor's escrow officer, Joyce Yancy, prepared the escrow instructions, which were reviewed and signed by the parties. After they opened the escrow, the buyers prepared a letter—as required by the sales contract—outlining their intent to refurbish the bar and make other changes to the property, such as constructing a liquor store. The letter further stated:

> Since we are syndicating this project with friends and associates, subordination will be minimal (Approx. $200,000).
>
> In approximately one year or more, after improving the property and the success of our dinner house and liquor store, we intend to pay off the first mortgage. We will then begin to construct fifteen units to be used as apartments or offices; if they are as successful as expected, we will continue to construct as needed.
>
> After paying off mortgage, property should be appraised close to one million dollars, subordination needed at that time will be approx. $350,000 of which most of the cost will be from investors.

The Manleys accepted this letter.

Pyramid supplied Ticor with a form subordination agreement that was only partly completed because information regarding their loan and deed of trust was not yet known. This subordination agreement stated that the loan amount would be $177,200.

Yancy submitted copies of the incomplete subordination agreement to the Manleys and to Arthur N. Johnson, a lawyer who was to become an assignee of a twenty-five percent interest in the Manley deed of trust. The Manleys and Johnson signed

the form agreements, by which they agreed to subordinate their deed of trust securing the $375,000 promissory note to another deed of trust that the buyers were in the process of obtaining. This deed of trust became known as the Tower deed of trust because the buyer obtained the $177,200 loan from Tower Acceptance and Service Corporation.

The effect of the subordination agreements was that the total of the two outstanding loans (the Tower loan and the Manley loan) was $552,000, secured by property being sold for only $500,000.

After Ticor received information regarding the buyers' note and the Tower deed of trust, Yancy filled in the blanks in the subordination agreements. This information included the date, interest rate, and terms of payment.

Knowing that the Tower loan would overencumber the Manley property, and knowing of Ticor's internal policy against employees handling such potentially fraudulent transactions, Yancy consulted with Lee Vrooman, Ticor's senior advisory escrow officer, about the situation. Yancy told Vrooman that the Manley escrow involved a commercial transaction in which the sellers were represented by legal counsel. Vrooman advised her that Ticor's policy against handling overencumbered property was inapplicable and that she could proceed with the escrow.

Before escrow closed, Yancy found out from Pyramid's California lender that Pyramid intended to use the Tower loan proceeds for their down payment on the Manley property. Ticor prepared an escrow settlement statement reflecting this usage and directing that the remaining loan proceeds be paid to Pyramid.

Yancy told Stika, the real estate agent, that Pyramid planned to use part of the Tower loan for the downpayment. She did not, however, directly tell this to the Manleys or to Johnson. According to the Manleys, she had told them earlier that the Tower loan proceeds would be used solely for construction. Whether Stika relayed the contrary information to the Manleys is disputed.

The escrow closed on December 5, 1983. Ticor received $148,000 of the $177,000 Tower loan to which the Manleys had agreed to subordinate. Yancy disbursed the funds according to the settlement sheet, including paying the $120,000 balance of the down payment owed to the Manleys, and $26,000 to the buyers. She then recorded the Tower deed of trust, the Manley deed of trust, and the subordination agreement, in that order. Ticor also issued a title insurance policy insuring the Manley deed of trust in the second lien position.

Following the close of escrow, the Manleys assigned a twenty-five percent interest in the beneficial interest of their deed of trust to Johnson.

Pyramid paid its monthly payments to the Manleys for eight months before defaulting on the September 1984 payment. Although the Manleys directed Ticor, as trustee, to notice a trustee's sale foreclosing on their deed of trust, the Manleys postponed the sale on numerous occasions.

Meanwhile, Dennis B. Noss, one of the alleged joint venturers in Pyramid, claimed that his signature on the Manley deed of trust was forged. By letter dated February 22, 1985, the Manleys requested that Ticor investigate the forgery and pay the full amount of the indebtedness if Noss' signature was forged.

Noss' legal counsel, however, informed the Manleys that Noss would claim no interest in the property. Ticor did not investigate the forgery but advised the Manleys that it would stand behind the Manleys' insured lien position and would take appropriate action to protect them if Noss attacked its validity. By letter dated March 18, 1985, Ticor informed the Manleys that it would not pay the indebtedness secured by the Manley deed of trust because the Manleys had neither been damaged nor had an adverse claim to their deed of trust been asserted. Ticor confirmed that it would protect the Manleys' insured second lien position under the policy if Noss ever asserted an adverse claim.

On March 19, 1985, the Manleys, fearing that Noss might assert an adverse claim, requested that Ticor establish the validity of their deed of trust. Ticor responded that it would request a quitclaim deed from Noss. Noss subsequently quitclaimed his interest in the property on October 7, 1985.

## PROCEDURAL HISTORY

The Manleys and Johnson filed this action against Ticor on April 3, 1985, to recover damages caused by Ticor's alleged improper conduct as escrow agent and title insurer. The complaint, amended on July 10, 1985, alleged nine counts: two counts of breach of the escrow contract; two counts of breach of fiduciary duty; bad faith breach of the escrow contract; breach of the title insurance contract; bad faith breach of the title insurance contract; negligent breach of the escrow obligation; and emotional distress.

On May 14, 1985, Ticor filed a motion to dismiss for failure to state a claim on Counts IV through VIII of plaintiffs' complaint as they apply to the Manleys, and to dismiss all Counts as to plaintiff Johnson. On July 16, 1985, the trial court granted Ticor's motion to dismiss with respect to Counts IV, VII, and VIII, and all counts as to plaintiff Johnson, but denied defendant's motion with respect to Counts V and VI. Ticor filed a motion for partial summary judgment on Counts V and VI on December 31, 1985; the trial court granted this motion on April 8, 1986.

On May 14, 1986, Ticor filed a motion for summary judgment on Counts I, II and IX. The court granted this motion with respect to Count IX on June 19, 1986, and with respect to Counts I and II on June 25, 1986. On July 30, 1986, plaintiffs filed a motion for reconsideration of the court's order granting summary judgment on Counts I and II. On September 4, 1986, Ticor filed a motion for summary judgment on the remaining count, Count III, which the court denied on October 3, 1986. Ticor filed a motion for reconsideration of the court's denial of summary judgment on Count III on November 19, 1986. On December 5, 1986, the court denied plaintiffs' motion for reconsideration of the order granting summary judgment on Counts I and II, and granted Ticor's motion for reconsideration on Count III, ordering summary judgment in favor of Ticor on that count.

Final judgment was entered in favor of Ticor on all counts and was amended on August 11, 1987 to dispose of all claims raised by both plaintiffs Manley and plaintiff Johnson. The Manleys and Johnson appeal from that amended judgment.

## DISCUSSION

We addressed most of the issues involved in this case in its companion case, *Burkons v. Ticor Title Ins. Co.*, 798 Ariz. 1308, 798 P.2d 1308 (App.1989) also filed today. Therefore, we will not repeat the legal analysis on issues common to both cases and will, where applicable, refer to *Burkons*.

## I. BREACH OF DUTIES ARISING OUT OF THE ESCROW CONTRACT

The bulk of the plaintiff's complaint dealt with Ticor's alleged contractual and tortious breach of duties arising out of the escrow contract.

### A. Breach of the escrow contract

The Manleys and Johnson allege two separate counts of breach of the escrow contract. They allege that Ticor breached the escrow contract by recording the deeds of trust incorrectly and by allowing the proceeds of the Tower loan to be used for purposes other than construction. They also allege that Ticor breached the escrow contract by obtaining the $375,000 note signed not by Pyramid, the Arizona joint venture, but by four individuals, one of whom's signature was forged.

For the same reasons we outlined in *Burkons*, we find that there was evidence to support the plaintiffs' claim that Ticor breached the escrow contract by recording the deeds of trust incorrectly and by allowing subordination to a loan used for purposes other than construction financing.

The escrow instructions indicated that the Manleys' lien was to have first lien

position. The subordination agreement did not contradict the language of the escrow instructions; it merely stated that the Manleys would "waive the priority." This does not mean that they were willing to give up their first recording position. We see no ambiguity created by the subordination agreement.

Additionally, the escrow instructions, the written subordination agreement, and Pyramid's letter of intent, when read together, demonstrate that the Manleys signed the subordination agreement because they believed the buyers intended to use the Tower loan for construction purposes. The deposition of the Manleys and Stika, together with Yancy's unsworn interview, also support this conclusion.

We do not consider the second breach of escrow contract count because plaintiffs have not addressed that issue in their brief.

## B. Bad faith breach of the escrow contract

■ The trial court dismissed this count for failure to state a claim. However, we hold today in *Burkons* that, partly because of its similarities to an insurance policy, an escrow contract also can give rise to a claim of bad faith breach of contract. Therefore, the trial court erred by dismissing the plaintiffs' claim of bad faith breach of the escrow contract.

## C. Breach of fiduciary duty

■ An escrow relationship gives rise to two distinct fiduciary duties: the escrow agent must act in strict accordance with the terms of the escrow agreement and must disclose to the escrow parties a known fraud. *Berry v. McLeod*, 124 Ariz. 346, 351–52, 604 P.2d 610, 615–16 (1979). The record contains evidence from which a trier of fact could find that Ticor breached both of these duties, and therefore we hold that the trial court erred by granting summary judgment in favor of Ticor.

### 1. Duty to follow the escrow agreement

Because we have decided above that there is evidence that Ticor breached its escrow contract, we also have determined that there is evidence that Ticor breached its fiduciary duty to strictly comply with the terms of the escrow contract. We agree with Ticor that the escrow instructions unambiguously required Ticor to subordinate the Manley deed of trust to the Tower deed of trust. We find, however, that Ticor failed to record the Manley deed of trust in a "first lien" position, as expressly required by the escrow instructions. Even if ambiguity did exist concerning the terms of the escrow agreement, Ticor had a duty to contact the principal and obtain clarification before proceeding. *Gardenhire v. Phoenix Title & Trust Co.*, 11 Ariz.App. 557, 559, 466 P.2d 776, 778 (1970).

### 2. Duty to disclose fraud

The Manleys and Johnson contend that there was evidence from which a trier of fact could find Ticor liable for failure to disclose a known fraud. They assert that Yancy knew that the property would be overencumbered and that Pyramid planned to use the proceeds from the Tower loan partly to fund the down payment, contrary to plaintiffs' belief that the loan would be used entirely for construction, and that Yancy did not disclose this to them.

As we point out today in *Burkons,* Ticor knew that the property would be overencumbered and that the Tower loan proceeds would be misused. A jury could have found that Yancy's knowledge of Pyramid's other transactions, the Manleys' understanding evidenced by the letter of intent and subordination agreement, and the misuse of funds by Pyramid, provided sufficient evidence of fraud to have caused a reasonable escrow agent to notify the Manleys of these occurrences.

Assuming that Yancy knew of this fraud, she then had a duty to disclose this information to the Manleys. The trial court erred in holding that Yancy fulfilled her duty as a matter of law by disclosing information on this issue to Stika, who acted as a dual agent for both the Manleys and Pyramid.

Generally, any knowledge acquired by an agent in the course of employment is imputed to the agent's principal. *See In re Estate of Milliman,* 101 Ariz. 54, 65, 415 P.2d 877, 888 (1966); *Restatement (Second) of Agency,* § 272 (1958). This rule normally applies even when the agent is acting on behalf of two adverse principals. *See Arizona Title Ins. & Trust Co. v. Smith,* 21 Ariz.App. 371, 376, 519 P.2d 860, 865 (1974). *See generally Imputation of Knowledge of Agent Acting for Both Parties to Transaction,* 4 A.L.R.3d 224, 249–50 (1965).

■ Knowledge is not imputed to the principal, however, when the agent has an interest adverse to that of the principal. *Hays v. Bank of Arizona,* 57 Ariz. 8, 11, 110 P.2d 235, 237 (1941); *Restatement (Second) of Agency,* § 279. Dual agency is not by itself the equivalent of "acting adversely."

■ There is some authority to support the idea that notice to a real estate agent handling a transaction for both buyer and seller should not constitute notice to either principal because of the agent's independent interest in seeing the transaction completed in order to earn a commission. *See, e.g., Holley v. Jackson,* 39 Del.Ch. 32, 39, 158 A.2d 803, 808 (1959). While we see some merit in that position, we choose not to interpret the dual-agency laws so broadly.

However, we do interpret *Berry v. McLeod* as requiring an escrow agent with knowledge of fraud to disclose this information directly to the principal who will be adversely affected by the fraud. In *Berry,* the plaintiffs alleged that the escrow company knew that the real estate agents were involved in a scheme to defraud the sellers. Our supreme court held that the escrow agent had a duty to disclose information about fraud to the "parties to the escrow." *Berry,* 124 Ariz. at 352, 604 P.2d at 616. Reliance on the real estate agents in *Berry* to convey information to their principal would have been futile.

Likewise, Yancy, who had knowledge of fraud by one party, should have disclosed the information directly to the Manleys and should not have relied on Stika, the dual agent. Despite her longstanding acquaintance with Stika, she should not have assumed that he was not part of the fraud. By the time the Manley escrow closed on December 5, 1983, Pyramid and Stika had opened the Burkons escrow. The Burkons deal, as we describe in that case, also involved subordination of the seller's deed of trust, use of money intended for construction purposes as a down payment, and overencumbrance of the property.

Our position on this conflicts with neither the *Restatement* nor established case law. "Acting adversely" is explained in section 282, comment c: "The mere fact that the agent's primary interests are not coincident with those of the principal does not prevent the latter from being affected by the knowledge of the agent if the agent is acting for the principal's interests." *Restatement (Second) of Agency,* § 282, comment c (1958). Illustration 4 to this comment explains the point:

> P appoints A to negotiate for the purchase of Blackacre, agreeing to pay him a commission of 10 per cent if he succeeds in persuading the owner to sell it and if A finds no defects in the title of record or otherwise. In investigating the title, A discovers an unrecorded equitable interest owned by T and, believing that the transaction will not be consummated if he reveals this equity to P, conceals his knowledge from P, who buys Blackacre upon A's favorable report. P is affected by A's knowledge.

*Id.* at 613, Illustration 4.

At issue in this case, however, is not fraud actually committed by Stika. The fraud is being committed by the other party. Stika, as real estate broker, had a fiduciary obligation to reveal all material facts about the transaction to his principals—the Manleys and Pyramid. *See Morley v. J. Pagel Realty & Ins.,* 27 Ariz.App. 62, 64, 550 P.2d 1104, 1106 (1976). However, he also was a dual agent who had a personal interest in seeing this transaction completed so that he could receive a substantial commission. Even though Yancy had no information that Stika was involved

with Pyramid as party to the fraud, she should not have relied on him—the dual agent—to relay the information about the down payment to the Manleys. She may have had no information implicating him, but she also had no information that he was not part of the scheme.

Our conclusion that Yancy should have disclosed directly to the Manleys the information about the use of the loan funds is supported by the fact that she had previously communicated with them on this very issue. The Manleys allege that Yancy told them that funds from the loans secured by the Tower deed of trust would be used for construction purposes.

For these same reasons, we also agree with the Manleys that a jury could find that Ticor was negligent in failing to inform the Manleys directly, rather than through Stika, of such a material point.

Ticor contends that holding as we do today "would not only ignore and undercut modern-day real estate transactions but would also place escrow officers in a completely untenable position. Thus, they would either be required to refuse to deal with agents or would have to constantly 'check-up' on agents to assure that all material facts were communicated to the principal." We disagree. The key factor in this case is that Stika acted as agent for *both* sides of a deal in which one party was engaged in activities that appeared fraudulent on their face. We hold today in *Burkons* that a responsible escrow agent would have recognized such activity. In this narrow circumstance, we believe that a responsible escrow agent would not have relied on the dual real estate agent to pass on such material information, when the escrow agent had previously allegedly communicated contrary information directly to the innocent seller and apparent intended victim of a fraud.

Johnson, who received the twenty-five percent assignment in the deed of trust, contends that even if Ticor's disclosure to Stika was sufficient to impute that knowledge to the Manleys, it did not give him notice because Stika was not his agent. This argument overlooks the fact that

while Ticor performed its duties as an escrow agent to the Manleys and Pyramid, Ticor owed no duty to Johnson. Johnson was not a party to the escrow and did not receive an assignment of any interest in the Manley deed of trust until after escrow had closed.

## II. BREACH OF THE TITLE INSURANCE CONTRACT AND INSURANCE BAD FAITH

The Manleys and Johnson further contend that Ticor breached its title policy by refusing to honor its promise to insure the plaintiffs' deed of trust as a first lien deed of trust and by refusing to investigate the alleged forgery of Dennis Noss' signature.

We first note that the Manleys' claim that Ticor breached its title insurance policy by not ensuring that the plaintiffs' deed of trust was recorded as a first-position lien is based on a preliminary title report indicating that the Manleys' deed *could* be insured as a first lien deed of trust. The actual policy insures the Manley deed of trust in second position. The Manleys and Johnson, however, neither alleged in the amended complaint nor briefed in the trial court the breach of the preliminary title report. Therefore, it was not considered by the trial court and, accordingly, we will not consider this argument on appeal. *Sereno v. Lumbermens Mut. Casualty Co.*, 132 Ariz. 546, 549, 647 P.2d 1144, 1147 (1982); *Gallego v. Strickland*, 121 Ariz. 160, 162, 589 P.2d 34, 36 (App.1978).

On the title-insurance claim, the Manleys focused below on Ticor's alleged failure to act concerning Dennis Noss' forged signature. The plaintiffs contend that Ticor breached its title insurance policy by failing to perfect the validity of the insured lien after Noss claimed a forgery of his signature. The trial court found that Ticor had met its obligations under the title insurance policy by determining that Noss was not asserting any adverse claim to the property and by obtaining from him a quitclaim deed confirming his repeated disavowals of any claimed interest. Further, we note the record demonstrates that Ticor had advised the Manleys it would protect

them pursuant to its title insurance policy against any adverse claim or loss. There is no evidence in the record that the Manleys have suffered any damage based on the alleged Noss forgery.

As part of their argument, the Manleys and Johnson also point out an affidavit of Frank Clemente in which he denies having had any intent to participate in the joint venture or to purchase the Manley property. Clemente does not claim forgery of his signature and therefore cannot deny having held himself out to be a member of Pyramid. *See Facit–Addo, Inc. v. Davis Fin. Corp.*, 134 Ariz. 6, 9–10, 653 P.2d 356, 359–60 (App.1982). The issue of whether he intended to form a joint venture is irrelevant to the Manleys. *May v. Sexton*, 68 Ariz. 358, 363, 206 P.2d 573, 577 (1949) (Phelps, J., concurring). Again, the Manleys have not suffered any damage because of Clemente's assertions.

The Ticor title insurance policy insures the Manleys from "loss or damage" incurred by certain causes. Title defects resulting in no loss or damage are expressly excluded from coverage. Therefore, the Manleys are entitled to recover only the actual loss sustained resulting from the title defects. *See generally* 9 J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 5216, at 99 (1981).

Ticor is under no duty to take affirmative action to perfect the validity of the Manley deed of trust. Rather, it is obligated to provide for the defense of an insured. The Manleys have never requested Ticor to defend any such action.

From the undisputed facts, we conclude as a matter of law that Ticor did not breach its title insurance policy nor did it act in bad faith as to the title insurance. As the trial court observed, Ticor consistently advised the Manleys that it would protect their interest against any adverse claim or loss. Moreover, Ticor has repeatedly urged the Manleys and Johnson to proceed with the trustee's sale and clear up any suspected cloud on their title.

Therefore, we conclude that the trial court properly granted summary judgment

in favor of Ticor on Counts V and VI of the complaint.

## ATTORNEY'S FEES

Both parties have requested attorney's fees pursuant to A.R.S. § 12–341.01. We discussed the availability of attorney's fees under this statute in *Burkons*. However since each party has prevailed on some issues and lost on others, we, in the exercise of our discretion, decline to award attorney's fees on appeal.

## DISPOSITION

The case is remanded for further proceedings consistent with this opinion and with *Burkons*, filed today, in the Manleys' first count of breach of the escrow contract alleging recording the deed of trust incorrectly. Judgment for Ticor is reversed on the breach of escrow contract allegation that Ticor allowed proceeds of the Tower loan to be used for purposes other than construction. Judgment for Ticor is affirmed on Johnson's two counts of breach of the escrow contract. The trial court is directed to reinstate the Manleys' count of bad faith breach of the escrow contract. The dismissal of Johnson's bad faith breach of escrow count is affirmed in favor of Ticor.

Summary judgment on Manleys' count of breach of fiduciary duty is reversed and remanded for further proceedings. The judgment for Ticor on this count filed by Johnson is affirmed. Summary judgment on Counts V and VI dealing with breach of title insurance contract and insurance bad faith is affirmed in favor of Ticor.

SHELLEY, P.J., concurs.

BROOKS, Judge, dissenting,

I dissent for the reasons stated in my dissent in a companion case, *Burkons v. Ticor Title Ins.*, 165 Ariz. 299, 798 P.2d 1308.

As the trial court aptly stated, the Manleys are asking to expand upon the duties placed on an escrow agent by our supreme court in *Berry v. McLeod*, 124 Ariz. 346,

604 P.2d 610 (1979). Neither the trial court nor this court has such authority.

I would affirm the judgment of the trial court.

### ORDER

Appellee Ticor's motion for Reconsideration and Appellants Manleys' response thereto were considered by the court with Judge Melvyn T. Shelley presiding and Judges Sarah D. Grant and J. Thomas Brooks, participating.

IT IS ORDERED denying appellee Ticor's motion for reconsideration. Judge Brooks, in accordance with his dissenting opinion, would grant the motion for reconsideration.

The court also considered appellant Manleys' motion to clarify the opinion and appellee Ticor's response thereto.

IT IS ORDERED granting the appellants' motion to clarify the opinion.

FURTHER ORDERED correcting this opinion as follows:

line 16 on page 18 reads:

"Judgment for Ticor is affirmed on the breach of escrow contract allegation that Ticor allowed proceeds of the Tower loan to be used for purposes other than construction."

The word "affirmed" should read "reversed". Therefore the sentence is corrected to read:

"Judgment for Ticor is reversed on the breach of escrow contract allegation that Ticor allowed proceeds of the Tower loan to be used for purposes other than construction."

IT IS FURTHER ORDERED that the clerk of this court shall correct the opinion heretofore filed accordingly.

FURTHER ORDERED appellant Manleys' motion for reconsideration on the issue of attorney's fees is Denied.