816 P.2d 225

Henry E. MANLEY and Donna L. Manley, and Arthur Johnson, Plaintiffs/Appellants,

v.

TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, a California corporation, Defendant/Appellee.

No. CV–90–0293–PR.

Supreme Court of Arizona, En Banc.

July 9, 1991.

Reconsideration Denied Sept. 24, 1991.

Jennings, Strouss & Salmon by Timothy W. Barton, Michael R. Palumbo, Carol A. Cluff and Diane R. Flaaen, Phoenix, for plaintiffs/appellants.

Streich Lang by Don P. Martin, Timothy J. Thomason and Robert E. Miles, Phoenix, for defendant/appellee.

Molloy, Jones & Donahue, P.C. by Russell E. Jones and Gary F. Howard, Tucson, for amicus curiae Stewart Title & Trust.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Franzula M. Bacher and Larry L. Smith, Phoenix, for amicus curiae Land Title Ass'n.

## OPINION

FELDMAN, Vice Chief Justice.

Ticor Title Insurance Company of California (Ticor) petitioned us to review an opinion of the court of appeals, claiming that the court improperly expanded the duties of an escrow agent and created obligations not previously imposed by law. *See Manley v. Ticor Title Ins. Co.*, 165 Ariz. 318, 798 P.2d 1327 (Ct.App.1989). We granted review (*see* Rule 23, Ariz.R.Civ. App.P., 17B A.R.S.) and consolidated this

case for argument with two others also involving Ticor and similar real estate transactions. *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 813 P.2d 710 (1991), and *Cline v. Ticor Title Ins. Co.*, No. CV–90–0498–PR (Ariz.Sup.Ct. July ___, 1991) (memorandum decision). We have jurisdiction under article 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

An entity known as Pyramid I (Pyramid) contracted to purchase real property from Henry and Donna Manley (the Manleys), and the parties named Ticor as escrow agent for the transaction. Pyramid had engaged Ticor as escrow agent in a series of transactions involving the purchase of various parcels of real estate from different sellers. The general scheme of these transactions is set forth in some detail in our opinion in *Burkons*, at 347, 813 P.2d at 712. We refer the reader to that opinion and set forth here only the facts essential to resolve this case.

In 1983, the Manleys owned a house and a bar/restaurant known as Hank's Place, located on six acres of land in Glendale. They listed the properties for sale with real estate agents George Stika and Steve Willbanks. Stika arranged for Pyramid to purchase the property for $500,000. The purchase contract provided for a down payment of $125,000, with the $375,000 balance, to be paid over five years, evidenced by a promissory note secured by a deed of trust. Handwritten additions to the contract provided that the escrow would contain "a partial subordination clause drawn up by buyer's attorney," a "letter of intent as to amount & use," and that "seller is aware that buyers intend to construct dinner house & apartments."

Joyce Yancy, Ticor's escrow officer in the other transactions involving Pyramid, drafted the escrow instructions on the basis of this purchase contract. The escrow instructions recited that the "Escrow Agent is to be furnished with a Partial Subordination Agreement by the Buyers' attorney. Buyer's [sic] herein agree to furnish (1) Letter of Intent—regarding

amounts and use of premises and (2) Financial Statements and (3) Personal Guarantees. Seller is aware that Buyer's [sic] intends to construct a dinner house and apartments."

Pyramid prepared the letter of intent set forth in the margin [1] and furnished Ticor with a form subordination agreement, incomplete except for the Manleys' names and the amount of the loan, $177,200. As in *Burkons,* Pyramid was to obtain the loan from Tower Acceptance and Service Corp. (Tower), securing it with a deed of trust that would take priority over the Manleys' purchase money lien on the property. Pyramid provided the details of the Tower loan to Yancy, who then completed the subordination form.

Sometime before closing escrow, Yancy discovered from Tower that Pyramid intended to use the Tower loan proceeds for the down payment on the Manleys' property. Yancy realized that, if the Tower loan were not used to finance construction improvements, the Manleys' property would be "overencumbered." [2] Knowing Ticor had an internal policy against handling overencumbered transactions because of the potential for fraud, Yancy consulted her supervisor, Lee Vrooman. After being informed by Yancy that the Manley escrow involved a commercial transaction in which the sellers were represented by legal counsel,[3] Vrooman told Yancy that Ticor's policy against handling overencumbered transactions was inapplicable and advised Yancy to proceed with the escrow. Yancy told Stika that Pyramid intended to use part of the Tower loan for the down payment, but she did not inform the Manleys directly. The Manleys say, rather, that Yancy had told them earlier that the Tower loan proceeds would be used for construction. There is some dispute as to whether Stika apprised the Manleys of Yancy's later statement to the contrary.

At the close of escrow on December 5, 1983, Ticor received $148,000 of the $177,-

---

1. The letter of intent read:

   To Whom It May Concern:
   Domencio Spano Restauranteau in Long Beach and Belmont Shore, California for over forty years, has decided to open a bar and restaurant in Arizona to meet cash flow needs. Hank's Place seems to meet our requirements.
   We intend to refurbish the 5,000 square foot house to a dinner house featuring country and western entertainment. We will also refurbish the existing bar and extend the lounge to the east of the property. To the west of the bar we intend to construct a liquor store and drive-in window, also to screen in west side of bar and dinner house for patio dining and dancing.
   Since we are syndicating this project with friends and associates, subordination will be minimal (approx. $200,000).
   In approximately one year or more, after improving the property and the success of our dinner house and liquor store, we intend to pay off the first mortgage. We will then begin to construct fifteen units to be used as apartments or offices; if they are as successful as expected, we will continue to construct as needed.
   After paying off mortgage, property should be appraised close to $1,000,000, subordination needed at that time will be approx. $350,-000 of which most of the cost will be from investors.
   We have contracted for the property to be carefully master-planned by ... and the pre-liminary site-plan will be ready for inspection by July 16, 1983. If at that time seller is in disagreement of our intentions as to the remodeling, we are open to suggestions, and welcome any ideas that may further the success of our venture.
   Respectfully yours,
   Rev. Domencio Spano

2. As in *Burkons,* at 348, 813 P.2d at 713 we use the term "overencumbered" to describe situations such as the present case, where the combination of liens exceeds the property's value and sales price, and where the proceeds of the lien taking priority to the seller's purchase money obligation have not been used to improve the value of the property. In making such use of the term, we acknowledge that "overencumbered" is not a legal term of art. We use the term, however, because Ticor used it to describe such situations.

3. Arthur Johnson, an attorney, held a $100,000 mortgage on the Manley property, which he apparently released in exchange for a twenty-five percent assignment in the Manley deed of trust. Johnson signed a blank subordination agreement, though he did not receive any interest in the deed of trust until after escrow had closed. Johnson was not a party to the escrow and did not purport to represent the Manleys in this transaction. He joined as plaintiff in this action, but the court of appeals affirmed the trial court's judgment in favor of Ticor on all counts relating to Johnson. *Manley,* 165 Ariz. at 325, 798 P.2d at 1334.

200 loan to which the Manleys had agreed to subordinate. Tower apparently retained the remaining $29,200 for loan fees, commissions, and prepaid interest. Yancy disbursed the loan proceeds according to the escrow settlement statement she prepared, paying the $120,000 balance of the down payment,[4] and disbursing the $28,000 balance directly to the *buyer*. Yancy then recorded, in order, the Tower deed of trust, the Manley deed of trust, and the subordination agreement.

After making eight monthly payments on its promissory note to the Manleys, Pyramid defaulted. The Manleys filed this action, alleging nine counts involving breach of contractual and fiduciary escrow duties, breach of a title insurance contract, bad faith, and intentional infliction of emotional distress.

After numerous motions to dismiss, motions for summary judgment, and motions for reconsideration, the trial court eventually entered final judgment in favor of Ticor on all counts. Relying on its opinion in *Burkons v. Ticor Title Ins. Co. of Cal.*, 165 Ariz. 299, 798 P.2d 1308 (Ct.App.1989), the court of appeals reversed the trial court's grant of summary judgment on one count alleging breach of the escrow contract, one count alleging breach of fiduciary duty, and one count alleging bad faith breach of the escrow contract. The court of appeals affirmed the trial court's judgment in favor of Ticor on all remaining counts. *Manley*, 165 Ariz. at 325, 798 P.2d at 1334. We granted Ticor's petition for review and consolidated it for argument with *Burkons*.

### DISCUSSION

Ticor raises six issues that fall into three categories. The first category concerns interpretation of the agreement between the parties, specifically whether the parties intended that the Manleys' lien would be subordinated if the buyer's loan was not used to improve the property. The second category deals with an escrow agent's duty to disclose fraud, and whether Ticor satis-

fied that duty in the present case by notifying the Manleys' real estate agent, George Stika. The final category deals with the bad faith breach of the escrow contract. We addressed all but one of these issues in *Burkons*.

### A. The Contract

The Manleys contend that Ticor breached the escrow contract by recording the deeds of trust and subordination agreement incorrectly and by permitting the proceeds of the Tower loan to be used for purposes other than constructing improvements. For the reasons set forth in *Burkons*, and because of the similarities in the agreements and circumstances of the transactions, we conclude that the documents in question cannot be interpreted as a matter of law as an unconditional agreement that the Tower lien is to take priority over the Manleys' purchase money lien.

The purchase contract calls for a partial subordination clause, requires the buyer to furnish a letter of intent as to "amounts and use," and recites that the seller is aware that the buyer intends to construct specific improvements on the property. While the letter of intent does not expressly commit loan proceeds to construction purposes, it undeniably links subordination, and the need for subordination, with financing the construction of specific improvements. Further, the Manleys, their real estate agent, and the escrow officer stated it was their understanding that the Tower loan proceeds were to be used for improvements to the property.

Given all this, we are unable to accept the trial court's finding that, as a matter of law, the agreement was "consistent, clear and unambiguous" and did not "in any way ... obligate[ ] [Ticor] to subordinate the Manley deed of trust only to a construction loan or to see that the loan proceeds were used only for construction and improvement of the property." Minute Entry, June 25, 1986. The facts of this case lend themselves even more strongly than in *Burkons* to the view that the sellers'

---

**4.** Pyramid had placed a $5,000 earnest deposit. From the record, it appears that this was the only money Pyramid ever advanced on this transaction.

agreement to subordinate was conditional on the use of the loan proceeds for construction of a "dinner house." As in *Burkons,* it is at least a question of fact whether the parties intended to condition the subordination agreement on the use of the loan proceeds for improvements. If they did, Ticor breached by failing to effectuate that intent. If the facts raised an ambiguity as to the parties' intent, Ticor was obligated to obtain clarification. *See Burkons,* at 352–353, 813 P.2d at 717–718.

While the record arguably contains one statement by Henry Manley that indicates an unconditional subordination may have been intended,[5] we find the evidence conflicting due to the other statements in the record, made by Mr. Manley and others, about the nature of the agreement. Conflicting evidence, of course, precludes entry of summary judgment. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990); *Whitfield Transp. v. Tucson Warehouse & Transfer Co.,* 78 Ariz. 136, 138, 276 P.2d 954, 955 (1954).

## B. The Escrow Agent's Duty to Disclose Fraud

### 1. *Awareness of Fraud*

■ The Manleys contend that facts and circumstances known to Joyce Yancy, the escrow officer, raised sufficient indicia of fraud so that she was obligated to disclose this knowledge to the Manleys. We agree. Our review of the record reveals that a trier of fact could consider Ticor's internal policy against overencumbered transactions because of the possibility of fraud, together with the circumstances of this transaction, and conclude that sufficient evidence of fraud existed to cause a reasonable escrow agent to disclose the details to the parties. *See Burkons,* at 353–354, 813 P.2d at 718–719 (discussing *Berry v. McLeod,* 124 Ariz. 346, 604 P.2d 610 (1979)).

This brings us to the issue not present in *Burkons:* whether Yancy fulfilled any obligation to disclose fraud by disclosing the source of Pyramid's financing methods to the Manleys' real estate agent, George Stika.

### 2. *Imputing Stika's Knowledge to the Manleys*

■ The general rule, of course, is that knowledge acquired by an agent in the course of employment is imputed to the principal. Restatement (Second) of Agency §§ 272, 275 (1958) (hereafter Restatement); *In re Estate of Milliman,* 101 Ariz. 54, 65, 415 P.2d 877, 888 (1966). Ticor contends that Stika was the Manleys' agent in their dealings with Yancy because he was the listing agent for their property. As a real estate broker, Stika had a fiduciary obligation to reveal all material facts about the transaction to his principals. *Morley v. J. Pagel Realty & Ins.,* 27 Ariz.App. 62, 64–65, 550 P.2d 1104, 1106–07 (1976).

■ The rule that notice to the agent is notice to the principal is premised on the presumption that the agent will perform his obligation to give his principal all knowledge relevant to the principal's protection and interest. F. MECHEM, THE LAW OF AGENCY § 1815 (1914). However, the presumption that the agent will fulfill this obligation "will not prevail where it is certainly to be expected that the agent will not perform his duty, as where the agent ... is in reality acting in his own or another's interest, and adversely to that of his principal." *Id.* at 1399–1400; Restatement § 279 comment a. "In such cases the presumption is that the agent will conceal any facts which might be detrimental to his own interests, rather than that he will disclose it." F. MECHEM, *supra* § 1815, at 1400.

■ The Manleys contend that Stika was also an agent for Pyramid and therefore a dual agent in this transaction. Even if we were to accept the Manleys' characterization of Stika as a dual agent, as the court of appeals correctly noted, "[d]ual

---

5. Mr. Manley stated he never instructed Ticor "to allow the proceeds to be used for certain purposes but not for others." Deposition of Henry Manley, Nov. 26, 1985, at 103. The trial court relied in part on this statement in granting summary judgment. Minute Entry, June 25, 1986.

agency *is not by itself* the equivalent of 'acting adversely.'" *Manley*, 165 Ariz. at 323, 798 P.2d at 1332 (emphasis added). The knowledge of a dual agent is normally imputed to both principals. *Arizona Title Ins. & Trust Co. v. Smith*, 21 Ariz.App. 371, 376, 519 P.2d 860, 865 (1974); Annotation, *Imputation of Knowledge of Agent Acting for Both Parties to Transaction*, 4 A.L.R.3d 224, 259–60 (1965).

■ Neither does Stika's interest in consummating the transaction to receive his commission prohibit imputing his knowledge to the Manleys. Though there is some case law to the contrary, the weight of authority holds that "[t]he interest of a salesman selling on commission is ... clearly not the kind of interest which will relieve the principal from having the agent's knowledge imputed to him...." W. SEAVEY, LAW OF AGENCY § 102, at 185 (1964); *see* Annot., *supra*, 4 A.L.R.3d 224; Restatement § 282 illustration 4. *But see Herdan v. Hanson*, 182 Cal. 538, 189 P. 440 (1920); *Holley v. Jackson*, 39 Del.Ch. 32, 158 A.2d 803, 808 (1959).

■ Thus, whether Ticor fulfilled its duty to disclose fraud by disclosing the source of the down payment to Stika, rather than directly notifying the Manleys, depends, we believe, on whether Ticor knew Stika "ha[d] interests so adverse to those of [his] principal that he would be unlikely to reveal relevant knowledge." W. SEAVEY, *supra* § 102, at 184; F. MECHEM, *supra* § 1815, at 1399–1400.

■ The court of appeals held as a matter of law that Ticor had a duty to notify the Manleys directly. *Manley*, 165 Ariz. at 323, 798 P.2d at 1332. Given the practical necessities of transacting business through agents that originally gave rise to the presumption of imputed knowledge, we cannot agree with the court of appeals' view that under *Berry v. McLeod*, an escrow officer's duty to disclose fraud must, in all cases, be fulfilled by notifying the principal directly. On the other hand, we do agree with the court of appeals' conclusion that the "trial court erred in holding that Yancy fulfilled her duty as a matter of law by disclosing information on this issue to Stika...."

165 Ariz. at 322, 798 P.2d at 1331. The dispositive question is whether "the notifier is aware of facts [from] which he should realize that, because of an adverse interest, the agent would not give the principal the information intended to be conveyed." W. SEAVEY, *supra* § 96, at 173. The present record does not permit that question to be answered as a matter of law.

The record would permit the trier of fact to conclude that Yancy was in frequent contact with Stika's principals (the Manleys), that Yancy told the Manleys directly that the loan proceeds would be used to finance construction, that Yancy was aware of facts that showed Pyramid was engaged in a series of fraudulent transactions, that Yancy was suspicious of the transactions, and that Yancy also knew Stika was acting as Pyramid's agent in both this and the other transactions. Aware that Pyramid's activities raised sufficient indicia of fraud to give rise to the duty to disclose, Yancy took no steps to advise the principal with whom she had actual contact. Instead, she contented herself with mentioning the matter to a dual agent who, at best, had a substantial financial interest in closing the several transactions and, at worst, as far as Yancy knew, may have been involved in the scam.

We believe, therefore, that a question of fact remains as to whether Ticor fulfilled its duty to disclose fraud by telling Stika the source of the down payment, rather than by disclosing directly to the Manleys the details of Pyramid's operation. *See Marine Midland Bank v. John E. Russo Produce*, 50 N.Y.2d 31, 427 N.Y.S.2d 961, 968, 405 N.E.2d 205, 212 (1980) (whether possible "informational barrier" between bookkeeper and employer prevented imputation of knowledge to latter presented an issue of fact). Under the circumstances of this case, it is a jury question whether Yancy was "aware of facts" from which she should realize that "the agent would not give the principal the information intended to be conveyed." W. SEAVEY, *supra* § 96, at 173. If the jury answers that question affirmatively, then the notice giv-

en to Stika is not imputed to Manley and Ticor did not fulfill its duty of disclosure.

### C. Tort Damages for Breach of the Implied Covenant of Good Faith and Fair Dealing

The Manleys advanced the claim that Ticor is liable in tort for bad faith because Ticor refused to comply with the Manleys' request to "correct" what the Manleys believed to be a breach of the escrow agreement. The factual basis the Manleys allege gives rise to the bad faith claim is substantially identical to that advanced by the Burkons. Accordingly, for the reasons set forth in *Burkons,* we hold that the present record does not support a bad faith claim and offer no opinion as to the applicability of the tort of bad faith to escrow agreements generally. *See Burkons,* at 356, 813 P.2d at 721.

### CONCLUSION

We vacate the court of appeals' opinion, reverse the trial court's grant of summary judgment on the counts alleging breach of the escrow contract and breach of fiduciary duty, and remand for further proceedings consistent with this opinion and with our opinion in *Burkons v. Ticor Title Insurance Co.*

CAMERON, MOELLER, JJ., and JOHN M. ROLL, Vice Chief Judge, and LAWRENCE HOWARD, Judge, Court of Appeals, concur.

GORDON, C.J., and CORCORAN, J., did not participate in this decision; pursuant to article 6, § 3 of the Arizona Constitution, JOHN M. ROLL, Vice Chief Judge and LAWRENCE HOWARD, Judge of the Court of Appeals, Division Two, were designated to sit in their stead.