**In re: Norma J HURT, fka/Norma J. Pace, Debtor,**

**BFOW, INC., an Oregon corporation, Appellant,**

v.

**Norma J. Hurt, fka/Norma J. Pace, Appellee.**

No. 03–15821.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 2004.

Decided March 25, 2005.

Lawrence B. Slater, Esq., Lawrence B. Slater & Associates, Gilbert, AZ, for Appellant.

G. Gregory Eagleburger, Esq., Eagleburger Group, Phoenix, AZ, Lester L. Penterman, Lester L. Penterman, P.C., Scottsdale, AZ, for Appellee.

Before: RYMER, TALLMAN, and BEA, Circuit Judges.

### MEMORANDUM *

Appellant BFOW, Inc. appeals the district court's affirmance of the bankruptcy court's judgment in Adversary Proceeding No. 95–913 that Appellee Norma J. Hurt owned a 100 percent interest in the New River property before it was sold to BFOW and, thus, was entitled to 100 percent of the proceeds of the $125,000 sale. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the district court's judgment. Because the parties are familiar with the rather complicated factual and procedural history, we do not repeat it here except to the extent necessary for our disposition.

### I.

In reviewing the bankruptcy court's judgment, " '[w]e stand in the same position as did the district court in reviewing the bankruptcy court's order.' *United States v. Wyle* (*In re Pacific Far E. Lines, Inc.*), 889 F.2d 242, 244 (9th Cir.1989). We therefore review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo." *In re Levander*, 180 F.3d 1114, 1118 (9th Cir.1999). Further, although "[w]e review the interpretation and meaning of contract provisions de novo," *DP Aviation v. Smiths Indus. Aerospace and Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir.2001) (citing *Mendler v. Winterland Prod., Ltd.*, 207 F.3d 1119, 1121 (9th Cir.2000)), "[w]hen a [bank-ruptcy] court uses extrinsic evidence to interpret a contract, we review the findings of fact for clear error . . . ." *See id.* (citing *United States ex rel. Lindenthal v. Gen. Dynamics Corp.*, 61 F.3d 1402, 1412 (9th Cir.1995)).

Review under the clearly erroneous standard is significantly deferential, requiring a " 'definite and firm conviction that a mistake has been committed.' " *Easley v. Cromartie*, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Indeed, if the bankruptcy court's account of the evidence "is plausible in light of the record viewed in its entirety," we may not reverse it even if we "would have weighed the evidence differently." *SEC v. Rubera*, 350 F.3d 1084, 1093–94 (9th Cir.2003). Further, "[w]here an intermediate court reviews, and affirms, a [bankruptcy] court's factual findings, [we] will not 'lightly overturn' the concurrent findings of the two lower courts." *See Easley*, 532 U.S. at 242–43, 121 S.Ct. 1452.

### II.

### A.

The bankruptcy court's finding that Hurt succeeded to her former husband's interest in the New River property following their divorce is undisputed.

### B.

■ The bankruptcy court's second finding—that prior to Adversary Proceeding No. 87–199, Stringham's one-quarter interest in the property had passed to Spain—finds support in the record. Pursuant to a loan and settlement agreement

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

entered into by Pace and Spain on October 20, 1970, Spain and Pace agreed that Spain would loan Pace $5,000, that Pace's interest in the New River property (which, at the time, was an undivided one-half interest held with Hurt) would serve as security for the loan, and *"that Spain has paid Stringhams [sic] part [of the New River property] and is to assume his interest from this date."* (Emphasis added).

Hurt seems to have had this understanding at least as early as March 25, 1986, when she filed a voluntary bankruptcy petition and described her holding of the New River property as an "undivided one-half interest *with Andrew Spain."* Spain also corroborated this understanding. For example, although Spain filed two objections in Adversary Proceeding No. 87–199 wherein he characterized his interest in the New River property as "an undivided one-fourth interest," the subsequently filed joint pre-trial statements twice characterize Spain's interest in the New River property as "an undivided one-half interest." Moreover, according to a letter dated February 15, 1991, from L & L Sales Co. to Spain, Spain apparently advised L & L Sales Co. in 1989 that he "held" Stringham's one-quarter interest.

### C.

■ The bankruptcy court next concluded that the April 3, 1990, order and judgment, wherein the bankruptcy court approved the January 23, 1990, settlement of Adversary Proceeding No. 87–199, divested Spain of his interest in the New River property. Although this conclusion is not free from doubt, we are nevertheless unable to hold that the bankruptcy court erred.[1]

#### 1.

This issue turns first on the scope of the settlement of Adversary Proceeding No. 87–199, which turns on the meaning of the settlement agreement reached on January 23, 1990. Attached as Exhibit 1 to the settlement agreement is a listing of real properties. The bankruptcy court's April 3, 1990, order and judgment explains that "[t]he property listed on the exhibit tendered with the settlement agreement which have *not* been crossed out and initialed as 'out' shall be confirmed in Norma J. Hurt as her sole and separate property...." (Emphasis added). The New River property is included in Exhibit 1 but is not "struck out" in the manner described by the bankruptcy court in its April 3, 1990, order and judgment.

Neither of BFOW's arguments compel the conclusion that the bankruptcy court erred.

*First,* BFOW correctly notes that the phrase "½ Spain" is handwritten next to the New River property listing in Exhibit 1 and argues that this signified that Spain was to retain his interest in the New River property despite the settlement. BFOW's argument is not without support in William Wulfers' colloquy with the bankruptcy court; nevertheless, BFOW's argument fails because Wulfers' explanatory comments are not reflected in the January 23, 1990, settlement agreement itself, and the bankruptcy court's April 3, 1990, order and judgment incorporates only the settlement agreement and attached exhibit.

*Second,* BFOW argues that Spain's interest in the New River property was never at issue in Adversary Proceeding No. 87–199 and, thus, could not have been divested pursuant to the settlement

---

**1.** Although we previously indicated that Hurt's claim to Spain's interest was "arguable," *In re Hurt,* No. 98–16455, 2000 WL 140894, at *2 (9th Cir. Feb.8, 2000), we did not address the argument that Hurt makes here.

agreement. Regardless, there is ample evidence that the January 23, 1990, settlement was meant to be global and to encompass issues and claims not necessarily within the bankruptcy proceeding. For example, Eagleburger testified that Spain was included in the January 23, 1990, settlement agreement despite not being a defendant in Adversary Proceeding No. 87–199 because "we were doing things outside the adversary ... because we needed to resolve all of the problems or thought we were resolving all the problems." As the Bankruptcy Appellate Panel held: "The settlement agreement entered into between [Hurt] and the claimants was designed to finally resolve all claims asserted by the claimants against [Hurt's] estate. *The parties agreed to stipulate to collateral matters, such as the payment of child support, as part of this settlement agreement.*" *In re Hurt,* Nos. AZ–90–1142+, slip op. at 9 (B.A.P. 9th Cir. June 1, 1992) (emphasis added).

### 2.

BFOW argues in the alternative that even if the January 23, 1990, settlement agreement did purport to divest Spain of his interest in the New River property, he neither signed the settlement agreement nor authorized anyone else to do so on his behalf. However, shortly thereafter Spain knew that the April 3, 1990, order and judgment purported to divest him of his interest in the New River property. But Pace's authority to sign the January 23, 1990, settlement agreement on Spain's behalf apparently was not challenged in subsequent appeals. *See In re Hurt,* Nos. AZ–90–1142+ (B.A.P. 9th Cir. June 1, 1992); *In re Hurt,* No. 92–16538, 1994 WL 224263 (9th Cir. May 26, 1994), *cert. denied sub nom., Kachina Plywood, Inc. v. Hurt,* 513 U.S. 1190, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995), and *Pace v. Hurt,* 514

U.S. 1098, 115 S.Ct. 1829, 131 L.Ed.2d 749 (1995).

### D.

There were a number of attempted conveyances of Spain's and Stringham's purported interests in the New River property between the April 3, 1990, order and judgment and the bankruptcy court's November 20, 1995, order authorizing Hurt to sell the New River property. We agree with the bankruptcy court's conclusion that the April 3, 1990, order and judgment vested Hurt with a full interest in the New River property. Moreover, Spain acted as BFOW's agent in these attempted conveyances and, thus, Spain's knowledge that Hurt had a full interest in the New River property is imputed to BFOW. *See Manley v. Ticor Title Ins. Co. of California,* 168 Ariz. 568, 816 P.2d 225, 229 (1991) (discussing the general rule that the principal is on notice where notice was given to the agent).

AFFIRMED.